IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 02-41-JJF |
| | : | |
| | : | Civil Action No. 04-1375-JJF |
| FABIAN LIVINGSTON, | : | |
| | : | |
| Defendant. | : | |
| | : | |

Colm F. Connolly, Esquire, United States Attorney, and April M.
Byrd, Esquire, Assistant United States Attorney of the UNITED
STATES DEPARTMENT OF JUSTICE, Wilmington, Delaware.
Attorneys for Plaintiff.

Penny Marshall, Esquire of the OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Wilmington, Delaware.
Attorney for Defendant.

### O P I N I O N

April 4, 2006
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is a Motion To Vacate, Set Aside Or Reverse Conviction, Or Absent Reversal Of Conviction, To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255 (D.I. 47). For the reasons discussed Defendant's Section 2255 Motion will be granted. Defendant's conviction will be vacated, new counsel will be appointed to represent Defendant, and a new trial will be ordered.

**BACKGROUND**

## I.   Procedural Background

Defendant was convicted by a jury of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) based on his possession of a Walther 9mm automatic pistol and a Lorcin .380 caliber pistol. The Walther pistol had been retrieved by Defendant's thirteen year old son while he was left at home unsupervised. Defendant's son shot his ten year old friend in the face with the pistol while they were playing. Following the jury's conviction, the Court sentenced Defendant to twenty-one months imprisonment and three years of supervised release. Defendant was represented during trial and at sentencing by Douglas Stern, Esquire, a Pennsylvania attorney.

For purposes of his direct appeal, the Office of the Federal Public Defender was appointed to represent Defendant. The Court

1

of Appeals for the Third Circuit affirmed Defendant's conviction "without prejudice to [Defendant's] right to pursue a petition under 28 U.S.C. § 2255, alleging ineffective assistance of counsel." <u>United States v. Livingston</u>, 2002 WL 376876 (3d Cir. Feb. 27, 2004).

On April 8, 2004, Defendant completed his twenty-one month prison term and was released from Lewisburg Prison.[1]  After his release from prison, Defendant filed the instant Section 2255 Motion alleging ineffective assistance of counsel.  Specifically, Defendant contends that his trial counsel had an actual conflict of interest based on (1) his fee agreement with Defendant, and (2) his failure to render correct legal advice.  Defendant contends that these actual conflicts resulted in a lapse in trial counsel's representation of Defendant, preventing Defendant from being able to make an informed decision about whether to go to trial or plead guilty.

In response, the Government contends that Defendant cannot satisfy either prong of the <u>Strickland</u> analysis.  The Government contends that any incorrect advice rendered by Defendant's trial counsel prior to the attachment of his right to counsel cannot form the basis for an ineffective assistance of counsel claim. In addition, the Government contends that Defendant cannot

_____

[1]    Defendant is currently serving his term of supervised release under the supervision of the United States Probation Office for the Eastern District of Pennsylvania.

establish prejudice within the meaning of <u>Strickland</u>, because the only remedy available to Defendant would be the entry of a guilty plea, and Defendant has already served the incarceration portion of his sentence.

The Court held an evidentiary hearing on Defendant's Motion. Defendant's trial counsel did not testify at the hearing, and the Government did not call any witnesses.  Defendant testified and also called Gerard Wittstadt, a Maryland attorney, to testify on his behalf.

## II.   Factual Background Concerning Defendant's Ineffective Assistance Of Counsel Claim

### A.   Defendant's Testimony

Defendant's relationship with his trial counsel, Mr. Stern, began well-prior to the events that gave rise to the criminal charges at the heart of the instant Motion.  Mr. Stern had represented Defendant in other criminal matters in the past, and Mr. Stern had advised Defendant that he could possess a gun after he completed his probation for another offense.  (Hearing Tr. at 16.)  However, Mr. Stern advised Defendant that he could not obtain a license to carry the gun. (<u>Id.</u>)  Defendant testified that he understood Mr. Stern's advice to mean that he could possess a firearm if it was kept in his home, but that he could not carry the firearm on his person.  As a result of Defendant's understanding, Defendant retrieved a safe and a gun that he had kept at his friend's house.  (<u>Id.</u> at 34.)

3

Before agreeing to speak with the police about his son shooting a friend, Defendant contacted Mr. Stern for legal advice.  (<u>Id.</u> at 17.)  Mr. Stern advised Defendant to cooperate with the police, telling him that it would be "fine" for him to speak with them.  (<u>Id.</u> at 17, 18.)  Defendant testified that he would not have spoken with the police had Mr. Stern advised him otherwise.  (<u>Id.</u> at 18.)

Approximately a year after the shooting incident, Defendant was charged in the District of Delaware with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).  Based on what Mr. Stern had told him about his right to possess a gun in his home, Defendant thought the charge was a mistake.  (<u>Id.</u> at 19.)  Defendant retained Mr. Stern to represent him on the federal charge and signed a retainer agreement in which he assigned to Mr. Stern any money he might receive in connection with the settlement of a civil lawsuit that Mr. Stern was then prosecuting on Defendant's behalf.  (<u>Id.</u>)  At the time of the hearing, Defendant had not been informed by Mr. Stern of the results of his civil lawsuit, and Defendant did not know how much money, if any, Mr. Stern received in connection with that case. (<u>Id.</u> at 19-21.)

While representing Defendant on the federal charge, Mr. Stern told Defendant that he was charged in error, because he was not a felon.  (<u>Id.</u> at 21, 26.)  Mr. Stern told Defendant that if

4

he went to trial, he would be exposed to a 14-16 month range of imprisonment, but that if he pled guilty, he would be exposed to 10 months imprisonment. (<u>Id.</u> at 29-30.)  In actuality, Defendant was exposed to a range of 18-24 months imprisonment if he went to trial.

During the trial, Mr. Stern did not file a response to the Government's motion in limine seeking to prevent the defense from arguing that Defendant did not know he was a felon.  Further, Mr. Stern did not present any evidence that he had advised Defendant that he could possess a gun. (<u>Id.</u> at 22.)  In fact, Mr. Stern did not dispute the Government's contention at trial that Defendant was a felon.  Mr. Stern told Defendant that the Government had a weak case, that his chance of acquittal was good, and that there was no need for him to testify. (<u>Id.</u>)  Defendant trusted Mr. Stern's advice and believed that his defense to the charge was that he was not a felon.  The jury deliberated for approximately forty-five minutes and returned a verdict finding Defendant guilty.  Defendant testified at the evidentiary hearing that if Mr. Stern had told him that he had no defense, he would have pled guilty, rather than go to trial, so as to receive a lesser sentence. (<u>Id.</u> 29, 32.)

B.   <u>Mr. Wittstadt's Testimony</u>

At the hearing, Defendant presented the testimony of Gerard Wittstadt.[2]  Mr. Wittstadt testified that he believed the case against Defendant was overwhelming, and he spoke to Mr. Stern several times about the case against Defendant.  (<u>Id.</u> at 5, 9.) Recounting one of his conversations with Mr. Stern during the trial, Mr. Wittstadt testified:

> <u>Mr. Wittstadt</u>:  I approached Mr. Stern out in the hallway.  We had a somewhat friendly relationship from my conversations with him prior to the trial.
>
> And I kind of said to him, Doug, what are you doing here?  You're losing this case.  Why haven't you pled this case out?
>
> <u>Defendant's Counsel</u>:  And what was his response?
>
> <u>Mr. Wittstadt</u>:  Again counsel, as I told you on the telephone, I don't recall his specific words, but he told me, from my recollection, words to the effect of, Well my client has paid me to defend him in this matter, and I have an obligation to do so.
>
> He feels he is not guilty, and I'm going to defend him.  And I questioned him a little bit more, and I can't remember now, but eventually he said something, words to the effect that he had told Mr. Livingston – at some time in the past, Mr. Livingston had called him about this gun situation requesting his advice.
>
> And Mr. Stern told him, Yeah, I told him he could own a firearm.

(<u>Id.</u> at 5-6.)  Mr. Wittstadt also testified that, in his experience, he would not have advised a client in Defendant's

---

[2]    Mr. Wittstadt represented the family of the boy shot by Defendant's son.  Mr. Wittstadt was present at Defendant's trial as an observer.

6

position to own a gun.  (_Id._ at 10.)

DISCUSSION

## I.   Legal Standard For Evaluating Ineffective Assistance Of Counsel

### A.   The Strickland Analysis

To succeed on an ineffective assistance of counsel claim, a defendant must satisfy the two-part test set forth by the United States Supreme Court in _Strickland v. Washington_, 466 U.S. 668, _reh'q denied_, 467 U.S. 1267 (1984).  The first prong of the _Strickland_ test requires a defendant to show that his or her counsel's errors were so egregious as to fall below an "objective standard of reasonableness."  _Id._ at 687-88.  In determining whether counsel's representation was objectively reasonable, "the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  _Id._ at 689.  In turn, the defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.'"  _Id._ (quoting _Michel v. Louisiana_, 350 U.S. 91, 101 (1955)).

Under the second prong of _Strickland_, the defendant must demonstrate that he or she was actually prejudiced by counsel's errors, meaning that there is a reasonable probability that, but for counsel's faulty performance, the outcome of the proceedings would have been different.  _Strickland_, 466 U.S. at 692-94; _Frey v. Fulcomer_, 974 F.2d 348, 358 (3d Cir. 1992), _cert. denied_, 507

7

U.S. 954 (1993).  To establish prejudice, the defendant must also show that counsel's errors rendered the proceeding fundamentally unfair or unreliable.  Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).  Thus, a purely outcome determinative perspective is inappropriate.  Id.; Flamer v. State, 68 F.3d 710, 729 (3d Cir. 1995), cert. denied, 516 U.S. 1088 (1996).  However, prejudice is presumed when a defendant demonstrates that his attorney had an actual conflict of interest that adversely affected the attorney's performance.  Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).

    B.   Actual Conflicts Of Interest

    An actual conflict of interest exists if the interests of the defendant and his counsel diverge with respect to a material factual or legal issue or to a course of action.  Government of the Virgin Islands v. Zepp, 748 F.2d 125, 135-136 (3d Cir. 1984). The jurisprudence concerning the concept of an actual conflict of interest had its inception in cases involving joint and multiple representation of more than one defendant by the same attorney. Cuyler v. Sullivan, 446 U.S. 335, 341-342 (1980).  However, the Court of Appeals for the Third Circuit has indicated that this line of cases "must not be construed so narrowly as to encompass only those factual situations where counsel simultaneously represents different defendants."  Government of the Virgin Islands v. Zepp, 748 F.2d 125 (3d Cir. 1984).

8

In Zepp, the Third Circuit concluded that an actual conflict of interest existed where the defendant's trial counsel acted as a witness for the prosecution and potentially faced criminal liability on the same charges for which defendant was tried. Although there was no evidence demonstrating that trial counsel actually engaged in wrongdoing, the Third Circuit concluded that the attorney's potential liability for aiding and abetting or encouraging the destruction of evidence, based on his presence in Zepp's home at the relevant time, was sufficient to demonstrate an actual conflict of interest. Based on these circumstances, the Third Circuit explained:

> [I]t is unrealistic for this court to assume that Zepp's attorney vigorously pursued his client's best interest entirely free from the influence of his concern to avoid his own incrimination. In circumstances such as these, when defense counsel has independent personal information regarding the facts underlying his client's charges, and faces potential liability for those charges, he has an actual conflict of interest.

Zepp, 748 F.2d at 136 (citations omitted). To demonstrate an actual conflict of interest, the defendant must show two elements:

> First, he must demonstrate that some plausible defense strategy or tactic might have been pursued. He need not show that the defense would have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

United States v. Gambino, 864 F.2d 1064, 10170 (3d Cir. 1983).

9

## II.   Whether Defendant's Counsel Was Constitutionally Ineffective

### A.   Whether Mr. Stern's Performance Fell Below Objective Standards of Reasonableness

Reviewing the record as it relates to Mr. Stern's performance during his representation of Defendant, the Court concludes that Mr. Stern's representation of Defendant fell below objective standards of reasonableness.  The Court further concludes that Mr. Stern's legal advice was not just erroneous as a matter of law, it was manifestly unreasonable in light of the totality of the circumstances.  Following his conviction on other charges, Defendant conferred with Mr. Stern to determine whether he could lawfully possess a gun.  Mr. Stern incorrectly advised Defendant that such possession was legal; however, Mr. Stern's error was subsequently compounded when he advised Defendant to voluntarily speak with police after the August 2001 shooting incident involving Defendant's son.  Mr. Stern then proceeded to represent Defendant on criminal charges which flowed directly from the erroneous legal advice Mr. Stern had provided, and Mr. Stern failed to take any steps to correct the misapprehensions that arose as a consequence of his erroneous advice.[3]  To the

---

[3]     Moreover, Mr. Stern arranged for the payment of his fees for the criminal representation by having Defendant agree to fee arrangement which was contingent upon the settlement of a civil matter he was then pursuing on Defendant's behalf.  Mr. Stern's conduct in this regard is questionable under Rule 1.5(d) of the Pennsylvania Rules of Professional Conduct, and in the Court's view, this questionable ethical conduct provides additional grounds to support the Court's conclusion in Section

contrary, Mr. Stern cemented those misapprehensions and led Defendant down a path meant to make a trial seem more appealing than a guilty plea, the latter of which would necessarily have required Mr. Stern to admit to Defendant that his initial advice had been incorrect.  Instead, Mr. Stern represented to Defendant that the Government had a weak case, the charges against him were a mistake because he was not a felon, and the sentencing guideline ranges were more or less the same regardless of whether he pled guilty or proceeded to trial.

Mr. Stern's unreasonably deficient performance continued throughout the trial where he failed to present any defense on Defendant's behalf, despite his representations to Defendant that a defense existed.  Mr. Stern's substandard representation culminated at sentencing when he failed to make any arguments for a downward departure or for leniency, because such arguments would have necessarily implicated and exposed Mr. Stern's incorrect legal advice.  Because Mr. Stern failed to provide Defendant with correct, candid and honest legal advice, the Court concludes that, taken as a whole, Mr. Stern's representation of Defendant was objectively unreasonable.

---

II.C. of this Opinion that counsel labored under an actual conflict of interest which adversely affected his ability to represent Defendant.

B.    Whether Defendant Was Prejudiced By Mr. Stern's
      Deficient Performance

Having concluded that Mr. Stern failed to provide Defendant

with reasonable professional assistance, the Court must next

determine whether Defendant was prejudiced within the meaning of

Strickland.  The essence of the prejudice inquiry is whether

counsel's unreasonably deficient performance rendered the

proceedings against a defendant fundamentally unfair or

unreliable.

Because Mr. Stern failed to competently and candidly discuss

with Defendant the impact of his prior legal advice on

Defendant's legal options and strategies, the Court concludes

that Defendant was deprived of a meaningful and informed

opportunity to evaluate his options of whether to proceed to

trial or plead guilty.  Defendant credibly testified at the

evidentiary hearing that had he been fully and accurately

informed of the impact of Mr. Stern's advice on his defense

options and of the correct guideline ranges, Defendant would have

pled guilty instead of proceeding to trial.  Further, it is more

than likely that such a guilty plea would have resulted in

Defendant receiving a lesser sentence than what the Court

imposed.

Moreover, the Court is persuaded that Mr. Stern's

incompetent representation, coupled with his lack of candor with

Defendant, infected every stage of the proceedings against

12

Defendant.  Although Mr. Stern could not have succeeded as a
matter of law on a defense based on Defendant's ignorance of his
felony status, Mr. Stern could have used other strategies during
plea negotiations and at trial to Defendant's benefit.  Indeed,
Mr. Stern's failure to correctly advise Defendant could itself
have been used during plea negotiations to possibly obtain a
better sentence for Defendant or at trial to create a more
favorable image of Defendant before the jury.  While it may be
inappropriate here to comment fully on these options or to
discuss their potential success, the Court concludes that Mr.
Stern's representation was so fundamentally inadequate, that the
proceedings against Defendant cannot be said to have been either
fair or reliable.  Accordingly, the Court concludes that
Defendant has presented an ineffective assistance of counsel
claim under the <u>Strickland</u> standard.

C.   <u>Whether Mr. Stern Had An Actual Conflict Of Interest</u>

In the alternative, the Court concludes that Defendant has
also established an actual conflict of interest based on Mr.
Stern's self-interest in concealing from Defendant his own
incompetency and the fact that he provided Defendant with
erroneous legal advice.  In this regard, the Court concludes that
Defendant has demonstrated that he had plausible alternative
defense strategies and tactics that were not pursued, because
they were in conflict with Mr. Stern's self-interests.  Mr. Stern

13

could have told Defendant that he was incorrect about the
applicable law and that Defendant had no cognizable defense to
the charges.  Mr. Stern could then have had a candid and informed
discussion with Defendant about his legal options and strategies,
including the advantages and disadvantages of going to trial
compared with accepting a plea agreement, and the possibility of
presenting a defense that incorporated the legal advice of
counsel.[4]  Although such a defense strategy may ultimately have
been unsuccessful, the Court is persuaded that the fact that
Defendant acted on the advice of counsel may have advantaged
Defendant in matters from the plea negotiations to the
sentencing.  For example, Defendant may have chosen to testify at
the trial and/or pursued a downward departure.  However, it is
likely that both of these options would have revealed Defendant's
conversations with Mr. Stern and exposed his incompetent legal
advice.  In this regard, the Court finds that Mr. Stern knew that
he provided Defendant with erroneous legal advice, yet he
continued to represent Defendant and did not inform Defendant
about the impact of his erroneous advice on his continued
representation of Defendant.  Mr. Stern's awareness of his error
and the implication of it with regard to a possible conflict of
interest is amply demonstrated by both his conversation with Mr.

---

[4]     Such a defense strategy would have required Mr. Stern
to become a witness and withdraw from the case.  However,
Defendant was not provided this option.

14

Wittstadt, as well as by the deficiencies in his trial performance.

In sum, the Court concludes that Mr. Stern's professional commitment to Defendant's legal interests was compromised. Mr. Stern failed to pursue plausible legal options and strategies because those options could have exposed Mr. Stern's ineffectiveness as counsel for Defendant. Mr. Stern's lapses in representation directly impacted Defendant's ability to fairly evaluate his legal options and ultimately compromised the fairness of his trial by depriving Defendant of the competent and zealous advocacy of a "conflict-free" attorney.

Because the Court concludes that an actual conflict of interest exists, Defendant need not establish actual prejudice as required by <u>Strickland</u>. Accordingly, the Court concludes that Defendant has established that the assistance of Mr. Stern was ineffective based on an actual conflict of interest.

     D.   <u>Remedy for Ineffective Assistance Of Counsel</u>

Having concluded that Mr. Stern provided Defendant with ineffective assistance of counsel, the Court must next consider the appropriate remedy available to Defendant. Because Defendant has already served his term of incarceration, he requests the Court to either order a new trial with a "conflict-free" attorney, or eliminate the remainder of his supervised release. Given the egregious deficiencies in counsel's representation and

15

the actual conflict of interest under which Mr. Stern continued to represent Defendant, the Court concludes that the interests of justice and fairness require the Court to vacate Defendant's conviction and grant a new trial.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Motion To Vacate, Set Aside Or Reverse Conviction, Or Absent Reversal Of Conviction, To Vacate, Set Aside, Or Correct Sentence Pursuant to 28 U.S.C. § 2255.  Defendant's conviction will be vacated.

An appropriate Order will be entered.